No. 20,345.

THE C. C. JONES INVESTMENT COMPANY, *Appellant*, v. F. D. LOWREY, *Appellee*.

SYLLABUS BY THE COURT.

BROKERS—*Offer and Acceptance of Employment—Letters—Commissions.* A letter from a brokerage company to a banker, saying that it would be glad to give its best efforts to assist him in making a sale of his stock, and a reply stating that if satisfactory to other holders he might sell at a price named, are to be interpreted as an offer by the company of its services, in the expectation of receiving compensation therefor if successful, and as a qualified acceptance by the banker amounting to an invitation to the company to produce a customer with the understanding that it was to receive a commission if a sale should be brought about by its efforts.

Appeal from Pawnee district court; ALBERT S. FOULKS, judge. Opinion filed November 11, 1916. Reversed.

*F. Dumont Smith,* of Hutchinson, *E. E. Glasscock,* and *G. Polk Cline,* both of Larned, for the appellant.

*Charles E. Lobdell,* of Great Bend, for the appellee.

The opinion of the court was delivered by -

MASON, J.: The C. C. Jones Investment Company sued F. D. Lowrey for a commission on the sale of bank stock. A demurrer to the petition was sustained, and the plaintiff appeals.

The petition alleges that a sale of the stock was made by the defendant to a customer produced by. the plaintiff. The question in controversy is whether the facts set out show an employment. The defendant maintains that under the allegations of the pleading the plaintiff volunteered his services and is for that reason entitled to no compensation. The solution of the question presented depends upon the effect given to the letters interchanged by the parties. On March 19, 1911, the plaintiff wrote to the defendant:

"At the present time we have a very strong demand for active interests in good banks, and we are now in touch with several bankers who would like to buy some stock carrying with it an official position in an institution in your territory. If for any reason you would consider making a sale of your banking interest, please let us know at once and we will be glad to give our best efforts to assist you in making a satisfactory sale to one of these parties. You need have no hesitancy in giving us detail information in regard to your bank, as we used the most approved confidential method in handling this business."

The defendant answered on the 28th of the same month:

"Yours received. While I am not anxious to sell out, I might consider it providing it was satisfactory to the other stockholders. The price would be about $175.00."

In January, 1912, the plaintiff sent the following letter, to which no reply was returned, the sale being made to the customer named, about ten days later:

"Mr. John E. Wagner, who is an experienced banker and is looking for a proposition where he can purchase an active interest in a bank similar to yours, was in our office the other day and stated that he would be glad to take the matter up with you. We advised that he call on you at as early a date as possible. If he enters in negotiations with you and you think we could render you further assistance by coming to Larned and helping to close a deal, let us know and we will be glad to do so. You of course understand Mr. Lowrey that we charge the usual commission of $5 per share on the amount of stock sold."

We hold that these allegations show a liability on the part of the defendant. The first letter was an offer of the plaintiff's aid as a broker to find a customer for the stock, and the de-

fendant was bound to presume that the services, if they were accepted and proved successful, were to be compensated, there being nothing whatever to suggest that a gratuity was intended. The letter in reply, indicating a willingness to sell at a price named, was fairly to be interpreted, in the absence of anything to the contrary, as a qualified acceptance of the offer —an invitation to the plaintiff to produce any probable customer it might find, in the expectation of receiving a commission if a sale should be brought about through its efforts. A somewhat similar question was presented in *Johnson v. Huber,* 80 Kan. 591, 103 Pac. 99. There a real-estate agent wrote to a landowner asking if he would sell, and asking for a price, including commissions. He answered merely giving his price and saying that the tract could not be sold without the consent of the tenants. The court said:

"We have no difficulty in determining that the first letter and the reply should be construed as a contract authorizing the plaintiff to find a purchaser for the land, the price to be $2000 cash, net, provided arrangements could be made with the tenant as to time possession should be given." (p. 595.)

(See, also, *Stephens v. Scott,* 43 Kan. 285, 23 Pac. 555; 4 R. C. L. 248; Note, 27 L. R. A., n. s., 786.)

The judgment is reversed and the cause remanded with directions to overrule the demurrer.